IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


| | | |
|---|---|---|
| Harrison D. Worthington, III, et al., | : | Case No. C-1-03-649 |
| | : | |
| Plaintiffs, | : | District Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER APPROVING PARTIES' |
| | : | PROPOSED SETTLEMENT |
| CDW Corporation, | : | AGREEMENT, DISMISSING |
| | : | ACTION WITH PREJUDICE, |
| Defendant. | : | AND GRANTING PLAINTIFF'S |
| | : | APPLICATION FOR |
| | : | ATTORNEYS FEES AND |
| | : | COSTS |


This matter comes before the Court on the parties' motion for an Order both approving the parties' Stipulation and Settlement Agreement ("Agreement") (doc. #69) and dismissing with prejudice all claims and actions in this litigation, and on Plaintiffs' Application for Attorneys Fees and Costs (doc. #72). On April 10, 2006, this Court held a fairness hearing regarding the Agreement ("Agreement") (doc. #69). After reviewing the Agreement and other related materials submitted by the parties, and having heard from the parties at the fairness hearing, the Court has determined that the Agreement should be approved as fair, reasonable and adequate under Federal Rule of Civil Procedure 23(e). Therefore, and for the reasons that follow, the Court **APPROVES** the parties' Stipulation and Settlement Agreement (doc. #69), **GRANTS** Plaintiffs' Application for Attorneys Fees and Costs (doc. #72), **DISMISSES  WITH PREJUDICE** Plaintiffs' claims and this action.

I.      **JURISDICTION**

This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiffs' claims under the Worker Adjustment and Retraining Notification Act (the "WARN" Act), 29 U.S.C. § 2101 et seq. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' fraud and negligent misrepresentation claims under Ohio law.

II.     **PROCEDURAL HISTORY AND BACKGROUND**

On September 8, 2003, Plaintiff Harrison D. ("Dorsey") Worthington, III filed his initial class action complaint, on behalf of himself and 216 other similarly situated individuals, against Defendant CDW Corporation ("CDW") (doc. #1). Class representatives Connie Kern and Leslie Bloom were added as parties in Plaintiffs' Second Amended Complaint (doc. #22). On September 9, 2004 and October 13, 2004, respectively, Plaintiffs filed their third and fourth amended complaints (docs. ##32, 40), adding individual plaintiffs (and removing one), for a total of one hundred and sixteen named Plaintiffs. The class that was eventually certified includes an additional 100 former CDW employees, for a total of 216 Plaintiffs.

Plaintiffs' fourth and final amended complaint alleged violations of the WARN Act and Ohio law regarding fraud and negligent misrepresentation. Specifically, Plaintiffs alleged as follows: on September 12, 2003, each Class member received letters from CDW, the new majority owner of the Wilmington, Ohio distribution facility where they worked, announcing the immediate closing of the facility and their immediate termination. (See Doc. #40, ex. A.) That letter provided that, if Plaintiffs signed and returned an enclosed "Confidential Separation Agreement and General Release" ("CDW Release") to CDW, then Plaintiffs would be "entitled to the following severance benefits (to which you would not otherwise be entitled)," including severance equal to eight weeks

2

pay.  (Id.)  The CDW Release provided that the undersigned employee would receive the severance payment, that the employee agreed that CDW did not owe the employee any other severance amounts, and that the employee would not sue and released CDW and other related parties from any and all claims, including any claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Employee Retirement Income Security Act, the Family and Medical Leave Act, and the WARN Act.  (Doc. #40, ex. B.)

Plaintiffs alleged further that, under the WARN Act, employees must be given written notice of a plant closure and/or mass lay-off at least 60 days before closure, and that they were entitled to 60 days' pay but were offered only 56 days' pay.  Plaintiffs also alleged that CDW gave them fewer than the required 60 days' notice.  Plaintiffs alleged further that CDW committed fraud and negligent misrepresentation by indicating that Plaintiffs were entitled to severance pay only for signing the CDW Release, when that was not the case, and when CDW had a duty to disclose Plaintiffs' true rights under the WARN Act.

On September 1, 2005, this case was stayed following the parties' notice to the Court that they were engaged in settlement negotiations.  (Doc. # 63.)  On February 21, 2006, the parties filed the Agreement (doc. #69).  That same day, this Court entered an Order Preliminarily Approving Settlement and Notice and Claim Form to Class members ("Preliminary Order") (doc. #70-1).  In that Preliminary Order, the Court certified a Class defined as:  "All 216 former employees of CDW who were employed at the Wilmington, Ohio plant at any time on or after September 12, 2003 through its closing and whose employment was terminated by CDW in connection with such plant closing."  (Id. at ¶ 2.)  The Court also approved 1) the form of both the Notice (doc. #70-2) and the Settlement and Release ("Settlement Release") to be sent to the Class members (doc. #70-3); and

3

2) the parties' proposed notice procedure.  (Doc. #70-1 at ¶ 3.)  The Notice informed the Class members that the Court would hold a fairness hearing on April 10, 2006 at 10:30, that any Class member may file an objection, and that any member who filed an objection could address the Court at the hearing.  (See doc. #70-2.)

On April 10, 2006, this Court held the fairness hearing.  No objections were filed before the hearing, and no one made any objections or comments regarding the settlement at the hearing.

## III.    ANALYSIS

### A.    Notice

Under Rule 23(e), "the court must direct notice in a reasonable manner to all class members" of a proposed dismissal or compromise before a settlement agreement is approved.  As discussed above, the Court approved the parties' proposed notice.  Fed. R. Civ. P. 23(e).  Counsel has represented to the Court that Defendant's counsel, assisted by Class counsel's investigation, sent 216 Notices to the Class, some of which were resent by mail or email as new addresses became known.  (See doc. #73-3 (ex. G to doc. #72).)  Despite repeated efforts to do so, Counsel could not locate 8 of the Class members.[1]  The other 208[2] Class members all

---

[1] Under the Agreement, the amount of the Common Settlement Fund allocable to those 8 Class members, $15,423.91 adjusted by interest earned, will be split between two charities chosen by the parties, Workplace Fairness in San Francisco, California and Children's Memorial Hospital Foundation in Chicago, Illinois.

[2] Plaintiffs' counsel informed the Court at the hearing that they had received Settlement Releases by the March 28, 2006 deadline from 207 Class members.  Plaintiffs' counsel also reported that on the morning of the hearing, they had received a phone call from another class member in which she asked to join the class and agreed to sign and mail the Settlement Release.  Plaintiffs' counsel represented that Defendants' counsel agreed that the caller could also be included as a member of the class.

4

received notice, accepted the Agreement, and executed Settlement Releases.  The Court is satisfied that counsel for the parties made reasonable, extensive, and substantially successful efforts to provide notice to all Class members.  The Court may thus turn to the Agreement itself.

**B.      The Settlement Agreement**

"The law generally favors and encourages the settlement of class actions."  Franks v. Kroger Co., 649 F.2d 1216, 1224 (6th Cir. 1981); see also In re Art Materials Antitrust Litig., 100 F.R.D. 367, 369 (N.D. Ohio 1983).  Under Rule 23(e), a class action shall not be dismissed or compromised without the approval of the court.  Fed. R. Civ. P. 23(e)(1)(A).  The district court "must make an independent evaluation" of the adequacy, fairness and reasonableness of a proposed settlement.  See Malchman v. Davis, 706 F.2d 426, 433 (2nd Cir. 1983).

The proponents of the settlement bear the burden of proof regarding the approval of the agreement.  See Art Materials, 100 F.R.D. at 379.  A district court may approve a proposed settlement only after a hearing and only on a finding that the settlement is fair, reasonable, and adequate.  See id.; see also Fed. R. Civ. P. 23(e)(1)(C).  The "reasonableness determination is an issue of law . . . The determination does not require, and the court should not indulge in, speculation as to the merits of the controversy and the particular facts which underlay the legal positions espoused by the litigants."  Art Materials, 100 F.R.D. at 369.

Courts have considered various factors in determining whether a settlement is fair, reasonable, and adequate.  Id. at 370 (gathering cases); see also Enterprise Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240, 245 (S.D. Ohio 1991) (7 factors among others); Malchman, 706 F.2d at 433-34 (9 factors).  "What these varied articulations of the

district court's evaluative parameters demonstrate is not that class action settlements may be easily measured against a precise set of legal axioms, but that '[t]he court should be guided by other factors, the relevancy of which will vary from case to case' and '[b]ased upon a thorough analysis of these factors, the Court' should explain why it is either approving or disapproving the settlement.'" Art Materials, 100 F.R.D. at 371 (citing Ohio Public Interest Campaign v. Fisher Foods, Inc., 546 F. Supp. 1, 6-7 (N.D. Ohio 1982)).

The most significant factor is how the terms of the settlement compare with the likely rewards of litigation. Id. A related factor is an evaluation of the actual payout. Both of these factors weigh in favor of approving the Agreement. Here, if the class pursued litigation, the class plaintiffs would be entitled to receive only four more days' pay – having already received fifty-six days pay in exchange for signing the CDW Release – under the WARN Act's sixty days' pay requirement. Under the Agreement, however, the 116 named individual Plaintiffs each receive sixty days' pay, and the 100 other Class members each receive thirty days' pay – in addition to the fifty-six days' pay they have already received[3] – in exchange for the release of their fraud claims.[45] Class counsel has represented to the Court, and the Court finds, that given the Plaintiffs' individualized fraud claims, and substantial mitigation issues, the fraud claims would have been difficult and costly to pursue. Defendants' counsel has argued that Plaintiffs

---

[3] Except for Mr. Worthington, who never signed the CDW Release, and so did not receive the 56 days' pay.

[4] Class plaintiffs that participated in the discovery process were rewarded for their significant efforts, and their undertaking of costs, by the recovery of thirty more days of pay than those class plaintiffs that were passive members of the class.

[5] The specific amounts that each Class member will receive are listed on the Proposed Distribution Schedule (doc. #72-2).

were, at most, entitled to four additional days pay. In fact, at the hearing, Defendants' counsel

described the settlement to the Court as "generous" in light of the Plaintiffs' likelihood of

success at trial, but explained that Defendants entered into the Agreement because they

anticipated greater costs from a lengthy and expensive trial. Thus, the Court finds that Plaintiffs'

recovery under the Agreement is arguably substantially larger, and definitely more certain, than

any potential recovery from litigation. The Court also notes the fact that both Class counsel and

Defendant's counsel believe the settlement to be fair, reasonable, and adequate, which also

weighs in favor of approving the Agreement. See, e.g., Fisher Foods, Inc., 546 F. Supp. at 11.

Another significant factor when considering approval of a settlement is whether the

settlement is "the result of good-faith, arms-length negotiations." See Stotts v. Memphis Fire

Dept. 679 F.2d 541, 551 (6th Cir. 1982), rev'd on other grounds, 467 U.S. 561 (1984); see also

Art Materials, 100 F.R.D. at 369 (citing Stotts). The record here "bespeaks the professionalism

of all counsel in pursuit of an acceptable settlement negotiated in good faith and at arms-length."

Id. at 371. Class counsel and Defendant's counsel worked for two years and seven months

before coming to the Agreement. The parties engaged in a mediation in June 2004. Because of

the large number of plaintiffs and their individualized claims, Plaintiff's counsel also employed

Resolution Counsel, a private settlement counsel firm, to assist them. The parties also conducted

discovery relative to each individual class plaintiff. This extensive discovery is another factor

weighing in favor of approving the Agreement. See, e.g., Stotts, 679 at 552; Fisher Foods, 546

F. Supp. at 11 (considering extent of discovery and fact finding).

Under the Agreement, three named Plaintiffs ("Incentive Plaintiffs") receive incentive

awards ranging from $10,000 (for Ms. Bloom and Ms. Kern), to $50,000 (for Mr. Worthington).

7

"Incentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit."  Hadix v. Johnson, 322 F.3d 895, 897 (6th Cir. 2003), cert denied, 540 U.S. 854 (2003).  The Sixth Circuit first addressed the issue of incentive awards in Hadix.  Id.  Noting that many of its district courts had approved incentive awards, the Sixth Circuit held that there may be circumstances in which incentive awards are appropriate.  Id. at 898.  The Sixth Circuit did not elaborate upon those circumstances.  District courts within the Sixth Circuit, however, have considered the following factors

> (1) the action taken by the Class Representatives to protect the interest of Class Members and others and whether these actions resulted in a substantial benefit to Class Members; (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the Class Representatives pursuing the litigation.

Enterprise Energy, 137 F.R.D. at 250.

District courts within the Sixth Circuit have approved incentive awards of varying amounts depending upon the circumstances.  See, e.g., Brotherton v. Cleveland, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001) ($50,000 incentive award); Enterprise Energy, 137 F.R.D. at 251 ($50,000 incentive award); In re Dun & Bradstreet Credit Servs. Customer Litig., 130 F.R.D. 366, 373-774 (S.D.Ohio1990) ($35,000 to $55,000 awards).  Also, "a differentiation among class representatives based upon the role each played may be proper in given circumstances."  See In re Dun & Bradstreet, 130 F.R.D. at 374.

Here, Mr. Worthington, for whom Class Counsel has requested the largest incentive award, was instrumental in bringing this suit forward.  He was the only Class Member who did not sign the CDW Release.  He also initiated this action and pursued it alone for more than five

months before Ms. Bloom and Ms. Kern joined the suit, thereby undertaking substantial risk before and for far longer than any other named Plaintiffs.  For their part, Ms. Bloom and Ms. Kern joined the suit as named Plaintiffs more than sixth months before the remainder of the named Plaintiffs were added to the Complaint, which indicates their increased time and effort spent on this litigation.  (Compare docs. ## 22 and 32.)  The parties have also agreed that Ms. Bloom and Ms. Kern performed substantial services for the benefit of the class, see doc. #69 at ¶ 2.e., and as discussed above, the Incentive Plaintiffs garnered a substantial benefit for the Class members.  The Court also considers the fact that the Notice informed the Class members that Mr. Worthington, Ms. Bloom, and Ms. Kern would be receiving these incentive awards, and no Class Member has objected to the agreed upon incentive awards.  See In re Revco Secs. Litig., Nos. 851, 89CV593, 1992 WL 118800, at *1 (N.D. Ohio May 6, 1992) (noting those facts).  The Court thus finds that the incentive awards requested here are reasonable and appropriate.

A final significant factor that supports approval of the Agreement is the reaction of the putative class.  Id. at 372.  Here, not one class plaintiff opted out of the suit, and there were no objections made to the Agreement.  The unanimous approval of all Class members (save the 8 who could not be located), "is entitled to nearly dispositive weight in this court's evaluation of the proposed settlement."  Id.  The Court thus concludes that an analysis of the relevant factors shows that the Agreement is fair, reasonable, and adequate under Rule 23(e), and should be approved.

## C.     Attorneys' Fees & Costs

"It is well settled that a lawyer who recovers a common fund for the benefit of a class of persons in commercial litigation is entitled to reasonable attorneys' fees and expenses payable

from that fund.  See Enterprise Energy, 137 F.R.D. at 248 (citations omitted).  An award of attorneys' fees, however, is nevertheless at a court's discretion.  See Smillie v. Park Chem. Co., 710 F.2d 271, 275 (6th Cir. 1983).  The Sixth Circuit has enumerated the factors relevant to an award of attorneys' fees from a common fund.  Those factors are:

> (1) the value of the benefit rendered to the class;
> (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;
> (3) whether the services were undertaken on a contingent fee basis;
> (4) the value of the services on an hourly basis;
> (5) the complexity of the litigation; and
> (6) the professional skill and standing of all counsel.

Enterprise Energy, 137 F.R.D. at 248-49 (citing Smillie, 710 F.2d at 275).  In this case, all of these factors weigh in support of approving Class counsel's application for attorneys' fees and costs.

### 1.    Value of the Benefit Rendered to the Class, Complexity of Litigation, and Society's Stake

The Agreement provides a substantial benefit to the Class, and prevents the significant costs and risks of further litigation in this factually complex, highly individualized case.  Second, "[i]f attorneys are to be encouraged to handle litigation of this nature, attorneys must be awarded fair and reasonable compensation for their efforts."  Id.  Third, Class Counsel undertook this representation on a contingency fee basis and would not have received anything if they had not been successful.

### 2.    Counsel's Skill, the Value of Class Counsel's Services on an Hourly Basis, and the Contingent Fee Arrangement

The Court notes first that it is impressed with the professional skill of all counsel to this action.  Class counsel has represented that its attorneys, paralegals, assistants, and Resolution

Counsel collectively spent 1159.4 hours working on this case, for a total of $338,354.00 in billable time, and that its costs totaled $4315.58, for a total "lodestar" of $342,669.58 in fees and costs.[6]  (See docs. #72-2 (ex. A). and #74-7 (ex. F. to doc. #72) at 7.)  A common method for computing a fee award in a common fund case is to apply a multiplier to the lodestar.  Id. at 250. Courts have found a range of lodestars from 1.5 to 5 to be appropriate depending upon "the contingent nature of the case and the quality of an attorney's work."  See Bowling v. Pfizer, Inc., 922 F. Supp 1261, 1278 (applying percentage method, but comparing with lodestar/multiplier method), aff'd, 102 F.3d 777, 779 (6th Cir. 1996); Enterprise Energy, 137 F.R.D. at 250 (multiplier of 2.4-2.6 is "reasonable and conservative"); Basil v. Merrill Lynch, Pierce, Fenner & Smith, 640 F. Supp. 697, 704, 706 (S.D. Ohio 1986) (multiplier of 2.78); In re Beverly Hills Fire Litig., 639 F. Supp. 915, 924 (E.D. Ky. 1986) (multipliers of 1.5,2,2.5,3.5, and 5); In re Cenco, Inc. Securities Litig., 519 F. Supp. 322, 327 (N.D. Ill. 1981) (multipliers of 2 or 4, depending upon counsel's risk).  By way of example for the Court, Class counsel here has applied a multiplier of 2 to its lodestar, for a total of $611,023.58.[7]  (See doc. 72-2 (ex. A).)

However, Class counsel has actually requested an award not for its lodestar enhanced by

_____

[6]Class counsel based its hourly rates for the sample lodestar calculation in part on increases of hourly rates previously approved for its lead class attorney and other attorneys and paralegals by several district courts in the Southern District of Ohio and the Eastern District of Kentucky.  (See docs. #72-1 at 4-5, #72-2 (ex. A to doc. #72), and #73-2 (ex. G to doc. #72) ¶ 10.); see also McDaniel v. City of Cincinnati, No. C-1-99-325, slip op. at 3 (S.D. Ohio Aug. 09, 2001); Gatch v. Milacron, No. C-1-99-1009, slip op. at 6 (S.D. Ohio Jan. 31, 2002); Readnower v. General Ionics, Inc., No. C-1-01-654, slip op. at 2,10 (S.D. Ohio 2004); Jorling v. Habilitation Servs., No. 1:03cv00073, slip op. at 27 (E.D. Ky. July 14, 2005) (See doc. # 75 (attaching cases)).  The Court declines to address the reasonableness of Class counsel's proposed hourly rates, as this calculation was provided solely for a point of comparison, and as the Court determines, supra, that fees in this case should be determined by the percentage method.

[7]Counsel did not apply the multiplier either to its costs or to Resolution Counsel's $70,000.00 in fees.

11

a multiplier, but rather for a percentage of the common fund. The Sixth Circuit has recognized "the recent trend towards adoption of a percentage of the fund method in [common fund] cases." Rawlings v. Prudential-Bache Props., Inc., 9 F.3d 513, 515 (6th Cir. 1993). Nevertheless, the Circuit has also recognized that "it is necessary that district courts be permitted to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." Id. Thus, the Circuit requires "only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." Id.

The percentages awarded in common fund cases typically range from 20 to 50 percent of the common fund created." Enterprise Energy, 137 F.R.D. at 249-50. Here, Class counsel has applied for – and neither Defendant nor any Class member has objected to – an award of 38 and one-third percent of the $1.45 million dollar settlement, plus costs, for a total of $564,888.54. (See doc. # 72 at 1.) Counsel's requested percentage of 38 and one-third of the total gross settlement is solidly within the typical 20 to 50 percent range.

Finally, the fees and costs under the percentage method ($564,888.54) are reasonably related to the estimated hourly value of Class counsel's services ($342,669.58), and significantly less than the value of their services as calculated by the sample lodestar and multiplier method ($611,023.58). This Court finds that those facts, combined with the length and intensity of discovery and negotiations and the excellent results achieved, support applying the percentage method here. See Bowling, 102 F.3d at 779-80 (affirming reasonableness of fee award where court determined appropriate award after comparing lodestar to fees resulting from percentage calculation), aff'g Bowling v. Pfizer, Inc., 922 F. Supp. 1261 (S.D. Ohio 1996).

12

Consequently, as all factors weigh in favor, the Court finds that Class counsel's requested fees and costs are reasonable given the circumstances of this case and should be awarded.

IV.     **CONCLUSION**

Consistent with the foregoing, the Court hereby **ORDERS** as follows:

1.      The Court has jurisdiction over the subject matter of this action and over all parties to this action, including all members of the Class, defined as stated above. No persons whose employment was terminated were excluded from the Class.

2.       The Notice given to the members of the Class, which sets forth the principal terms of the Agreement and other matters set forth herein, was the best notice practicable under the circumstances.  The Notice provided due and adequate notice of the Agreement and fully satisfied the requirement of Federal Rule of Civil Procedure 23 and those of due process.

3.      Of the 216 Notices mailed to the Class, some of which were resent by mail or email as new addresses became known, 208 Class members accepted the settlement and executed Settlement Releases.  Class counsel made reasonable and sufficient efforts to locate the remaining 8 Class members after the March 28, 2006 due date, but were unable to do so even with the assistance of other Class members.  The amount of the Common Settlement Fund allocable to those 8 Class members is $15,423.91.  The Court hereby **APPROVES** that the $15,423.91 remaining in the Common Settlement Fund, as adjusted by interest earned, shall be distributed one-half to Workplace Fairness in San Francisco, California  94104

524042840f1239aa

and one-half to Children's Memorial Hospital Foundation, Chicago, Illinois, as provided in the Agreement.

4.      For the reasons stated above, Plaintiffs' counsel is **AWARDED** the amount of $564,888.54 for fair and reasonable attorneys' fees and costs and expenses incurred in the prosecution of the Class claims, such award to be paid from the Common Settlement Fund as specified in the Agreement.

5.      The Court also **APPROVES** incentive awards out of the Common Settlement Fund for the following Plaintiffs and Class members, who performed substantial services for the benefit of the class, in the following amounts:

| Name | Amount |
|------|--------|
| Dorsey Worthington | $50,000 |
| Connie Kern | $10,000 |
| Leslie Bloom | $10,000 |

6.      The Court hereby **APPROVES** the Class Settlement and the Agreement and finds that said settlement is, in all respects, fair, reasonable, and adequate to the class, and within the authority of the parties.

7.      The Court hereby **DISMISSES WITH PREJUDICE** all claims and actions in this litigation in their entirety against all persons and entities in favor of the Defendant and without costs to any of the parties as against any other settling party, except as provided in the Agreement and by this Order.

8.      All Class members are hereby barred and permanently enjoined from prosecuting, commencing, or continuing any claims, causes of action, damages and liabilities of

any kind, nature, and character whatsoever in law, equity, or otherwise, known or

unknown, suspected or unsuspected, that now exist, may exist, or heretofore existed,

arising out of, related to, connected with, or based in whole or in part on the entire

subject matter of the allegations in the Complaint.

IT IS SO ORDERED.

                                                \_\_\_\_s/Susan J. Dlott_____

                                                Susan J. Dlott

                                                United States District Judge

15